# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| IN RE GALENA BIOPHARMA, INC. SECURITIES LITIGATION, | CASE No.:3:14-cv-00367-SI<br>Filed: May 26, 2016<br>Judge: Hon. Michael Simon |

## NOTICE OF MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF EXPENSES</u>**

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on February 16, 2016 ("Preliminary Approval Order"), on June 23, 2016 at 3:30 p.m.., or as soon thereafter as counsel may be heard, at the United States Court, District of Oregon, Portland Division, 1000 Southwest Third Avenue, Portland, Oregon 97204, before the Honorable Michael H. Simon, Lead Plaintiffs Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema ("Lead Plaintiffs") and Plaintiff Alan Theriault (together with Lead Plaintiffs, the "Plaintiffs") will move for an order approving the partial settlement of this Action and partially dismissing it with prejudice.

The grounds for this motion are that the requested award of fees and expenses to Plaintiffs' Co-Lead Counsel and the payments to Lead Plaintiffs are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This motion is supported by the Declaration of Leigh Handelman Smollar in Support of Motion for Attorneys' Fees and Reimbursement of Expenses ("Smollar Decl."); the Declaration of Laurence Rosen in Support of Motion for Attorneys' Fees and Reimbursement of Expenses ("Rosen Decl."); Declaration of Jeffrey Ratliff in Support of Motion for Attorneys' Fees and Reimbursement of Expenses ("Ratliff Decl."); and the other filings in this case; and such other and further representations as may be made by counsel at any hearing on this matter.

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................1

II.     BACKGROUND ............................................................................................................2

        A.      Facts ...................................................................................................................2

        B.      Procedural History .............................................................................................3

        C.      Settlement Negotiations .....................................................................................4

III.    SPECIFIC EFFORTS OF CO-LEAD COUNSEL ........................................................5

IV.     ARGUMENT .................................................................................................................6

        1.      Co-Lead Counsel Requests an Award of Attorneys' Fees and
                Reimbursement of Expenses ...............................................................................6

        2.      A Reasonable Percentage Of The "Common Fund" Recovered Is
                An Appropriate Approach To Awarding Attorneys' Fees in
                Common Fund Cases ..........................................................................................7

        3.      The Requested Fee is Reasonable Under a Percentage-of-Fund
                Approach .............................................................................................................9

                a.      Co-Lead Counsel Achieved an Excellent Result for the
                        Class .....................................................................................................10

                b.      Risks of Litigation................................................................................11

                c.      The Contingent Nature of the Fee and the Financial Burden
                        Carried by Co-Lead Counsel ...............................................................12

                d.      The Skill Required and the Quality of the Work ..............................13

                e.      The Ninth Circuit Considers 25% of the Common Fund to
                        be a Reasonable Fee..............................................................................15

        4.      A Lodestar Cross-Check Shows the Fee Request Is Reasonable .............17

        5.      Co-Lead Counsel's Expenses Are Reasonable And Were Necessary
                To Achieve The Benefit Obtained .............................................................19

        6.      Co-Lead Counsel's Request for a Reimbursement of Costs to Lead
                Plaintiffs, for Their Efforts in Achieving the Settlement on Behalf of
                the Class, Should be Granted ..........................................................................20

        7.      The Reaction Of The Class Supports The Requested Award ...................21

V.      CONCLUSION................................................................................................................21

i

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc.Connecticut Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................. 9

*Bateman Eichler, Hill Richards, Inc., v. Berner*,
    472 U.S. 299 (1985) ..................................................................... 9

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D.Fla. 1988) .................................................. 14

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..................................................................... 8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..................................................................... 7

*Bond v. Ferguson Enters., Inc.*,
    No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ..................... 17

*Carter v. Anderson Merchandisers, LP.*,
    2010 WL 1946757 (C.D. Cal. May 11, 2010) ................................ 16

*Central Railroad & Banking Co. of Ga. V. Pettus*,
    113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885) .......................... 8

*Deaver v. Compass Bank*
    No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .......... 16, 17

*Dickerson v. Cable Commc'ns, Inc.*,
    No. 3:12-CV-00012-PK, 2013 WL 6178460 (D. Or. Nov. 25, 2013) ................... 16

*Eltman v. Grandma Lee's , Inc.*,
    No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986)............... 14

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ...................................................... 17

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)......................................................... 15

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015)................ 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................... 9

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .......................................................... 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..................................................................... 10

*In re Activision Litig.*,

723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................ 8, 16

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............................. 14

*In re CV Therapeutics, Inc., Sec. Litig.*,
No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007)..................................... 17, 21

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................. 14

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................. 11, 13

*In re Ikon Office Sols., Inc., Sec. Litig.*
194 F.R.D. 166 (E.D. Pa. 2000)..................................................................... 16

*In re Immune Response Sec. Litig.*,
497 F. Supp.2d 1166 (S.D. Cal. 2007)...................................................... 10, 13, 21

*In re Infospace, Inc.*,
330 F. Supp. 2d 1203 (W.D. Wash. 2004)........................................................... 18

*In re King Resources Co. Sec. Lit.*,
420 F. Supp. 610 (D. Colo. 1976) ................................................................... 14

*In re Media Vision Tech. Sec. Litig.*,
913 F.Supp. 1362 (N.D. Cal. 1996) ................................................................. 19

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D.Cal. 2008) ........................................................ *passim*

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ......................................................................... 16

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015),
*reconsideration denied*,
No. C-13-3440 EMC, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015)................................... 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*),
19 F.3d 1291 (9th Cir. 1994) ............................................................... 7, 9, 11, 13

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016). ................................. 16

*Internal Imp. Fund Trustees v. Greenough*,
105 U.S. 527 (1881).................................................................................. 7

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).................................................................................. 11

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ......................................................................... 8

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................ 14

*Mark v. Valley Ins. Co.*,
    No. CV 01-1575-BR, 2005 WL 1334374 (D. Or. May 31, 2005)..........................................22

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)...............................................................................................................7

*Morris v. Lifescan, Inc.*
    54 Fed. App'x 663 (9th Cir. 2003) .....................................................................................17

*Pace v. Quintanilla*
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014)...........................15

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .....................................................................................7, 8, 15

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ...........................................................................................16

*Schiller v. David's Bridal, Inc.*,
    No. 1:10-CV-00616-AWI, 2012 WL 2117001 (E.D. Cal. June 11, 2012)...........................21

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..............................................................................................8

*Stanger v. China Electric Motor, Inc.*
    812 F.3d 734 (9th Cir. 2016) ........................................................................................16, 18

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) .......................................................................................18

*Stetson v. Grissom*,
    No. 13-57061, 2016 WL 2731587 (9th Cir. May 11, 2016) ................................................18

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................................................8

*Trans World Airlines, Inc. v. Hughes*,
    312 F.Supp. 478 (S.D.N.Y. 1970)......................................................................................14

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................................18, 21

*Vandervort v. Balboa Capital Corp.*
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ..................................................................................17

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................................................7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................................*passim*

**STATUTES**

15 U.S.C. § 78U-4(a)(4) ..............................................................................................................20

15 U.S.C. § 78u-4(b)......................................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(h) ................................................................................................... 6

**RULES**

*Economic Analysis of Law*,
    Richard Posner, (3d ed. 1986)................................................................................ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs, individually and on behalf of all other members of the Settlement Class (collectively, "Plaintiffs")[1], respectfully move this Court for an Order awarding: (1) attorneys' fees of 25% of the Settlement Fund of $20.0 million, in the same proportions of cash and stock as the Class; (2) reimbursement of $112,534.65 in reasonable and necessary expenses that were incurred in prosecuting this Action; and (3) reimbursement of costs and expenses to each of the four Lead Plaintiffs in the amount of $5,000.

## I.    INTRODUCTION

Co-Lead Counsel and Liaison Counsel undertook the prosecution of this action ("Action") on a contingency fee basis, spending 2,203,25 hours and incurring $112,534.65 in unreimbursed fees and out-of-pocket expenses through the course of the litigation. *See* Smollar Decl., Rosen Decl. and Ratliff Decl. filed herewith. Through their efforts spanning two years, Co-Lead Counsel have obtained a settlement fund of $20.0 million for the benefit of the Class. This settlement provides an excellent benefit to the Class in this complex securities class action, with various Defendants and theories of recovery. *See* Court's ruling on Motion to Dismiss, Dkt. No. 149. As compensation for their efforts, Co-Lead Counsel respectfully request an award of attorneys' fees in the amount of twenty-five percent (25%) of the gross settlement fund, or $5.0 million, in the same proportion of cash and stock as the Settlement, and reimbursement of the expenses incurred in prosecuting these claims in the amount of $112,534.65. This requested fee and reimbursement of expenses falls well within the range of fee awards typically awarded in similar cases in the Ninth Circuit, and is reasonable in light of the successful result obtained in this complex case. Accordingly, Co-Lead Counsel and Liaison Counsel respectfully request that the Court grant this motion for the requested fees and reimbursement of expenses.

Additionally, Co-Lead Counsel respectfully request a $5,000 reimbursement to each of the

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings as in the Stipulation of Settlement (Dkt. No. 170) (the "Stipulation").

four Lead Plaintiffs for their work in achieving the Settlement. Lead Plaintiffs played an instrumental role in securing the Settlement for the Class and were actively involved in the prosecution of the Action with Co-Lead Counsel. Similar reimbursements have been granted in similar circumstances, the Court has the discretion to grant such an award, and the reimbursement is reasonable in light of the work Lead Plaintiffs did to assist in achieving the result obtained.

The fairness and reasonableness of Co-Lead Counsel's fee and expense request is confirmed when cross-checked with the Co-Lead Counsel's lodestar, and indeed amounts to a modest multiplier. Counsel spent over 2,203 hours of professional time, having a market value of approximately $1,493,175.00, in prosecuting the Action. *See* Joint Decl. ¶64. The requested fee, which incorporates a lodestar multiplier of 3.3, compensates Co-Lead Counsel for this time and labor, as well as the substantial risks associated with litigating this case on a fully contingent basis. The Class overwhelmingly approves of the settlement and request for attorneys' fees, evidenced by the fact that there has not been a single objection lodged to date. For the reasons set forth more fully below, Lead Plaintiffs respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should thus be awarded by the Court.

## II.    BACKGROUND

### A.    Facts

Lead Plaintiffs bring this action on behalf of all persons who purchased or otherwise acquired Galena common stock during the period between August 6, 2013 and May 14, 2014, both dates inclusive (the "Class"). Lead Plaintiffs' Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") alleges a pump-and-dump scheme wherein Defendants paid third party promoters (including non-settling Defendants "DreamTeam" and "Lidingo") to publish bullish articles regarding Galena on third-party websites, omitting to tell the market that they were paid promotions. The Complaint further alleges that the pump-and-dump scheme more than doubled Galena's stock price. Then, in January and early February of 2014,

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

certain of the Galena Defendants sold virtually their entire holdings, for $16.1 million. In a series of corrective disclosures beginning in early February, the market learned of the paid promotional scheme, causing the stock to plummet back to its pre-promotional campaign price.

### B.    Procedural History

The first of the five actions that make up this consolidated securities class action was filed on March 5, 2014. Dkt. No. 1. As mandated by the Private Securities Litigation Reform Act (the "PSLRA"), on May 5, 2014, four applications were filed for appointment as lead plaintiffs; among them were Lead Plaintiffs. Dkt. Nos. 21, 24, 26, 28. On October 3, 2014, the Court appointed Lead Plaintiffs, and approved their choice of Lead Counsel. Dkt. No. 52, at 24-25.

On October 31, 2014, Lead Plaintiffs filed their Complaint. Dkt. No. 59. The Complaint sought to recover on behalf of investors who bought Galena shares between August 6, 2013, and May 14, 2014, a Class Period which differed from any alleged in any of the original complaints filed. *Id.* at ¶1. The Complaint named as Defendants Ahn, Schwartz, Kriegsman, DreamTeam, Meyer, McCarthy, Lidingo, Bjorn, Bernarda, Chin, Galliker, Nisi, and Hillsberg, the last nine of whom had not been named as defendants in any of the complaints filed to date. ¶¶21-39. The Complaint also alleged claims under Section 20A of the Exchange Act, allowing recovery for insider trading violations.

The Complaint relied on Plaintiffs' investigation, including discussions with persons with knowledge, former employees of certain defendants, discussions with Seeking Alpha, and a review of message board postings that appeared to have been made by the Promoter Defendants. *Id.* at ¶¶ 52, 80. The Complaint also relied on a report prepared by a Galena Special Committee, as well as the Exhibits thereto, resulting from an investigation into the wrongdoing alleged in this Action. *E.g. id.* at ¶ 73 and n.6. As reflected in an order dated April 28, 2015, the Special Committee Report has been filed under seal with the Court. Dkt. No. 116.

On January 9, 2015, the Settling Defendants filed their motions to dismiss the Complaint. Dkt. Nos. 80, 81, 82. On March 6, 2015, Plaintiffs filed their opposition to the Settling Defendants'

motions to dismiss. Dkt. No. 95. And on April 3, 2015, Defendants filed their Replies in further support of their motions to dismiss. Dkt. Nos. 106, 107,109. Beyond the initial briefing, Plaintiffs filed supplemental authority.  Dkt. No. 110. On April 28, 2015, Plaintiffs appeared before the Court for oral argument on Defendants' motions to dismiss.  At oral arguments, the Court requested supplemental briefing on various issues, which the parties submitted.  Dkt. Nos. 127-130.  The Court ruled on the motions to dismiss on August 5, 2015, largely upholding the claims against Ahn and Galena, but dismissing claims against certain other Defendants. Dkt. No. 149.

### C.    Settlement Negotiations

After completion of the briefing on the Motions to Dismiss, the parties began settlement negotiations. On March 2, 2015, the Settling Parties and the Settling Defendants' D&O Insurers attended an all-day mediation presided over by the Honorable Layn R. Phillips (Ret.) assisted by the Honorable Gary Allen Feess (Ret.). Dkt. No. 170 at 4. The mediation took place at the law offices of King & Spalding in New York.  The parties continued Settlement discussions over the summer without success. Following the Court's decision on the motion to dismiss, the Settling Parties held a further mediation in New York on September 19, 2015. *Id.* at 5. Discussions at the September 19 mediation continued well into the night, with the Settling Parties agreeing in principle to settle plaintiffs' claims for $20.0 million. *Id*. After further discussions, the Settling Parties confirmed with the mediator by November 2015 the $20.0 million settlement on behalf of the Class with $19.0 million cash and $1.0 million worth of Galena stock.  These terms were ultimately documented in a Memorandum of Understanding ("MOU") executed on December 3, 2015. *Id.*

After entering into the MOU, the parties began preparing the settlement documents, including the stipulation of settlement, class notice, summary notice, claim form, plan of allocation, the motion and memoranda of law in support of preliminary approval, and the proposed orders granting preliminary approval and final approval. Over the next two months, the Parties

exchanged drafts of the settlement documents. The Parties finalized and executed the Stipulation of Settlement on February 5, 2016. Dkt. No. 167. The Court requested that certain Settlement Documents be resubmitted with additional information, and the Parties amended the Stipulation, and filed it on February 10, 2016. Dkt. No. 170.  Subsequently, on February 16, 2016, the Court granted the Plaintiffs' Motion for Preliminary Approval. *See* Dkt. No. 172.

## III.   SPECIFIC EFFORTS OF CO-LEAD COUNSEL

The gravamen of the Action required Plaintiffs to prove that the Settling Defendants disseminated statements into the market through third party promoters, inflating the price of Galena securities in order sell their Galena shares for a massive profit. The Complaint alleges that the Settling Defendants manipulated the market price of Galena stock by publishing bullish articles regarding Galena on third-party websites, omitting to tell the market that they were not paid promotions, and then selling their personally-held shares for a profit of over $16.1 million. Plaintiffs would be required to show that the Settling Defendants themselves "made" these statements for purposes of the securities laws despite the Supreme Court's ruling in *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("*Janus*"), and that investors suffered injuries as a result of the alleged misstatements.

To successfully prosecute the Action, Co-Lead Counsel conducted extensive investigation and research into the merits of the Action, including:

- Reviewing and analyzing Galena's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and investment conference transcripts, and other public statements;
- Collecting and reviewing a compilation of analyst reports and major financial news service reports on Galena;
- Reviewing and analyzing stock trading data relating to Galena;
- Locating and interviewing witnesses, including former Galena and DreamTeam employees;
- Researching in detail the business operations of DreamTeam and Lidingo;
- Analyzing challenges to Lead Plaintiffs' adequacy;

- Drafting the initial complaint and the Consolidated Amended Complaint in a manner which complied with the falsity and scienter requirements imposed by the PSLRA;

- Researching and drafting memoranda opposing the Settling Defendants' three separate Motions to Dismiss, including continual research after the briefing and providing the Court supplemental authority and supplemental briefing on certain issues requested by the Court after oral argument;

- Preparing for and appearing at oral argument on Defendants' Motions to Dismiss;

- Consulting with economic experts in the areas of loss causation, market efficiency, and damages;

- Preparing for and participating in two separate full-day mediations with a nationally regarded third-party neutral, the Hon. Layn R. Phillips (Ret.), including drafting opening mediation statements and responding to Settling Defendants' mediation statements, obtaining a very favorable settlement offer following arm's length negotiations with defense counsel, and participating in continued negotiation efforts over the weeks following the mediation sessions to achieve and finalize the Settlement;

- Preparing the Settlement, motion papers and related documents necessary to provide notice of the Settlement to Class Members, and to obtain preliminary and final approval of the Settlement; and

- Obtaining and reviewing all of the documents that Galena and its officers and directors had previously produced to the SEC.

Co-Lead Counsel's efforts to successfully resolve this Action have been without compensation of any kind to date, and payment of attorneys' fees was, and always has been, wholly contingent upon the result achieved. As compensation for these efforts, Co-Lead Counsel respectfully request this Court to award attorneys' fees of 25% of the Settlement Fund, plus $112,534.65 in unreimbursed expenses. Supported by ample case law, both in this Circuit and across the country, Co-Lead Counsel's 25% fee request is appropriate compensation for the excellent result Co-Lead Counsel have obtained for the Class.

## IV.    ARGUMENT

### 1.    Co-Lead Counsel Requests an Award of Attorneys' Fees and Reimbursement of Expenses

The PSLRA, the Federal Rules of Civil Procedure and Ninth Circuit precedent all require that a fee award be reasonable.[2] Here, the requested amount is based on a fee arrangement agreed

---

[2] 15 U.S.C. § 78u-4(b) (the total attorneys' fees and expenses awarded by the court are not to

upon at the outset of the case between Lead Plaintiffs and Co-Lead Counsel and is reasonable considering the relevant factors in the Ninth Circuit and a lodestar cross-check. As such, Co-Lead Counsel respectfully ask that the Court award the requested fee.

> ### 2.     A Reasonable Percentage Of The "Common Fund" Recovered Is An Appropriate Approach To Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Class, Co-Lead Counsel seek a fee of 25% of the Settlement Fund. The requested fee for the settlement on behalf of the Settlement Class is $5.0 million, in the same proportions of cash and stock as the Settlement, and is calculated based upon the $20.0 million Settlement Fund.

Both Supreme Court and Ninth Circuit precedent support Lead Plaintiffs' request for a percentage of the settlement fund. Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services. The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*), 19 F.3d 1291, 1300 (9th Cir. 1994). This rule, known as the "common fund doctrine," is firmly rooted in American case law. *See, e.g., Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881).

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.,* 557

---

exceed a "reasonable percentage" of the recovery); Fed. R. Civ. P. 23(H) ("the court may award reasonable attorneys' fees and nontaxable costs"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

F.2d 759, 769 (9th Cir. 1977). In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. V. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.
>
> \*\*\*
>
> The amount of such a reward is that which is deemed "reasonable" under the circumstances.
> (Emphasis in original; citations omitted).

In *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984), the Supreme Court recognized that under the common fund doctrine, a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d at 268; *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases. Following the Ninth Circuit's decisions in *Paul, Johnson* and its progeny, district courts have almost uniformly shifted to the percentage method in awarding fees in representative actions. Indeed, use of the percentage method "appears to be dominant." *In re OmniVision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D.Cal. 2008).

The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated with a percentage of the recovery. Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time. *See Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). Finally, use of the percentage method decreases the burden on the courts by eliminating a full-blown, detailed and time-consuming "lodestar" analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement. *See In re*

*Activision Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

Courts also have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar misconduct. Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide an effective weapon in the enforcement of the securities laws. *See generally, Bateman Eichler, Hill Richards, Inc., v. Berner*, 472 U.S. 299, 310 (1985); *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (2013) ("Congress, the Executive Branch, and this Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission") (internal quotations omitted).

### 3.    The Requested Fee is Reasonable Under a Percentage-of-Fund Approach

In this Circuit, it has long been established that the benchmark award for attorneys' fees is 25%. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Plaintiffs' request for 25% of the Settlement Fund is within the range of attorneys' fees awarded by federal courts in similar circumstances and is within the range of fees awarded by judges in this District. Relevant factors in assessing whether the requested percentage of the fee is appropriate include: (1) the results for the class; (2) the risks for its counsel; (3) whether the fee is within the range typically associated with cases of this kind; (4) the burden on plaintiffs' counsel of prosecuting the case, and (5) the difficulty of the questions presented. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Co-Lead Counsel prosecuted this case with no guarantee of receiving any compensation, and paid all costs and expenses to date without reimbursement. They have expended over 2,203 hours in professional services (including Liaison Counsel) and have incurred $112,534.65 in out-of-pocket expenses. *See* Joint Decl. ¶64; Smollar Decl. ¶¶11, 12; Rosen Decl.

9

at ¶¶6, 7; Ratliff Decl. ¶¶6, 7. By virtue of the hours and expenses invested in this litigation, Co-Lead Counsel have created a $20.0 million settlement fund for the benefit of the Class. Thus, confident that the relevant factors as discussed below support this application, Lead Plaintiffs seek an attorneys' fee award of 25% of the Settlement Fund, as well as reimbursement of expenses.

### a. Co-Lead Counsel Achieved an Excellent Result for the Class

Courts have recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (stating that the "most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp.2d 1166, 1175 (S.D. Cal. 2007). Here, the Court upheld some of the claims against some of the Settling Defendants, with complex legal issues involved. Further, the Company's ability to survive during settlement negotiations was very tenuous. Plaintiffs recognized that the Company would most likely not survive protracted litigation.

According to Cornerstone Research's *Securities Class Action Settlements: 2015 Review and Analysis* ("Cornerstone Report"), the median settlement for securities class action settlements in 2015 was $6.1 million, which this Settlement more than triples. *See* Exhibit 2 attached to the Joint Decl., at 1. Plaintiffs' experts estimate maximum damages are $166.3 million. In Defendants' view, damages were less than $40 million. The settlement represents 12% of the maximum estimated damages, before the deduction for fees and expenses, and more than 50% of damages using Defendants' expert's estimate. Settlements valued at a much lower percentage of possible damages are routinely approved. Thus, based on the statistics of an independent third party that monitors class actions, the settlement here of $20.0 million is an excellent recovery.

The $20.0 million settlement fund was entirely achieved by Co-Lead Counsel. As counsel for the Settling Defendants told the Court previously, "[t]he class plaintiffs certainly -- the $20 million both from insurance money and the company's contribution, cash and stock, was driven by the class plaintiffs' work, the risks, and the valuation of that case. There's no question." *See* Transcript of Proceedings for Derivative Class Hearing ("Derivative Tr."), 3:14-cv-382, April 21,

2016, p.36:18-22, attached as Exhibit 8 to the Joint Decl.

      **b. Risks of Litigation**

The risk that the litigation might result in the Class not recovering anything at all, particularly in a case involving complicated legal issues and a very tenuous financial state of Galena, is a significant factor in the award of fees. *OmniVision*, 559 F. Supp. 2d at 1047 (citing *Vizcaino*, 290 F.3d at 1048); *see also WPPSS*, 19 F.3d at 1299-1301. The real risk of Co-Lead Counsel receiving no compensation for their efforts in this litigation is an important, if not the foremost, factor in adjusting the attorneys' benchmark percentage upward. *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005).

This case presented substantial risks from the outset. First, Settling Defendants conducted their alleged fraud through publications that disclaimed that they were authored by Galena – thus, Settling Defendants argued, foreclosing claims under the securities laws. *See Janus*, 564 U.S. at 142.

Moreover, Co-Lead Counsel faced determined opponents who denied any wrongdoing. After public disclosure of the stock promotion, Galena formed a Special Committee consisting of two of its Directors to investigate the purported wrongdoing and recommend whether to proceed with a lawsuit against the alleged culprits. The Special Committee's counsel, Locke Lord LLP, reviewed 140,000 pages of documents, and ultimately produced the Special Committee Report, which concluded that there was no evidence that (1) Galena knew the DreamTeam Defendants paid bloggers to write favorable articles, (2) any insiders other than Ahn knew of the DreamTeam Defendants' activities before trading in Galena's stock, and (3) the DreamTeam Defendants' articles had a material effect on the price of Galena's stock. Reviewing the same documents, Plaintiffs alleged facts suggesting a contrary conclusion on all three points. For example, the Special Committee Report concluded that an email by Lidingo falsely claimed to have boosted Galena's stock price. Dkt. No. 59 ¶156. By reviewing stock price movements, Plaintiffs alleged facts showing that Lidingo's claim was accurate. The Special Committee Report took Bernarda's

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

claim in an email that she did not know who was one of the DreamTeam writers as evidence that the promotion was immaterial. Plaintiffs alleged facts showing that Bernarda was lying in this email to cover up the fraudulent promotion. *Id.* at ¶178. The Special Committee Report suggested that the timing of DreamTeam's termination was a coincidence. Using exhibits to the Special Committee Report, Plaintiffs alleged facts showing that Galena held a series of communications with DreamTeam within hours of being told that a reporter intended to write an article about the relationship, and fired DreamTeam soon after. *Id.* at ¶186. Indeed, the Court's ruling on the motion to dismiss dismissed various claims against various Defendants, presenting complex legal issues.

Nor is this a case where a plaintiff obtains a relatively small payment from a giant company. Galena is hardly a household name, and had only 22 full-time employees as of March 10, 2016.[3] Galena has never turned a profit, and as of September 30, 2015 (shortly before the Settlement), had an accumulated deficit of $259.7 million, and only $34.8 million in cash and cash equivalents.[4] The Company was in a dire financial state and would most likely not survive protracted litigation. Thus, obtaining a $20.0 million benefit for the Class is a significant recovery for the Class in the face of these very substantial risks. Under these circumstances the requested fee is fully justified. Further, Co-Lead Counsel undertook this litigation on a contingent basis despite these risks and obstacles, and therefore should be compensated for their work and for the risks they assumed.

### c.   The Contingent Nature of the Fee and the Financial Burden Carried by Co-Lead Counsel

A determination of a fair fee must include consideration of its contingent nature. It is "an established practice in the private legal market" to reward attorneys for taking the risk of

---

[3] Galena Biopharma, Inc., 10-K for the year ended December 31, 2015, at 18, available at < https://www.sec.gov/Archives/edgar/data/1390478/000139047816000088/gale-20151231x10xk. htm>.
[4] Galena Biopharma, Inc., 10-Q for the quarter ended September 30, 2015, available at <https://www.sec.gov/Archives/edgar/data/1390478/000139047815000050/gale-20150930x10q. htm>.

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.* Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 25% award. Co-Lead Counsel made a substantial outlay of both time and money in this case, all while facing the very real risk of recovering nothing. It is hardly uncommon for a plaintiff's counsel to remain completely unremunerated in such cases after having expended thousands of hours and large sums of money. Co-Lead Counsel received no compensation over the two years that this Action has been pending, and incurred $112,534.65 in litigation expenses for the benefit of the Class. Joint Decl. ¶ 64.  Any fee award or expense reimbursement to Co-Lead Counsel has always been at risk and completely contingent on the result achieved, and on this Court's exercise of its discretion in making any award.   Joint Decl. ¶56.   Thus, this factor militates in favor of the Court granting Co-Lead Counsel's request for attorneys' fees and expenses.  These factors substantially contribute to the reasonability of the requested fee. *See Heritage Bond.*, 2005 WL 1594403, at *21 (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *OmniVision*, 559, F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### d.  The Skill Required and the Quality of the Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Thus, the standing and prior experience of Co-Lead Counsel are relevant

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

in determining fair compensation. *See, e.g., Trans World Airlines, Inc. v. Hughes*, 312 F.Supp. 478, 480 (S.D.N.Y. 1970); *Eltman v. Grandma Lee's , Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field. *See*, Exhibits A to Smollar Decl. and Rosen Decl., Firm Resumes of Pomerantz LLP and The Rosen Law Firm, P.A. Co-Lead Counsel's decades of experience in litigating securities fraud class actions enabled them to successfully deal with the various legal and practical challenges that came their way. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) ("The court also notes that, throughout this litigation, it has been impressed by [Pomerantz's] acumen and diligence."); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action.")

Given the complexity of the issues presented in this Action, including the hotly-contested issues of loss causation, scienter, damages, and the statements' makers under *Janus*, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. Indeed, Co-Lead Counsel were required to: grasp and explain to the Court why the Settling Defendants were liable for scheme liability and why the Settling Defendants are liable for the omission from the third party promoters' articles of the true authors' names and sources of payment for those promotions; find applicable precedents to rebut the loss causation arguments presented by the Settling Defendants; and probe extremely complex issues regarding the pleading of scheme liability.

From the outset, Co-Lead Counsel left no stone unturned in an effort to obtain factual

support for the claims that Settling Defendants engaged in a scheme and made misrepresentations and material omissions with respect to the paid promotions. Ultimately, the information obtained proved valuable, and Co-Lead Counsel was thus able to negotiate an impressive $20.0 million settlement. Here, the quality of Co-Lead Counsel's work on this case is reflected in the significant recovery obtained. *See Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 547-48 (S.D. Fla. 1988).

The quality of opposing counsel is also important in evaluating the quality of the work done by Co-Lead Counsel.  *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Resources Co. Sec. Lit.,* 420 F. Supp. 610, 634 (D. Colo. 1976).  Here, Lead Plaintiff was vigorously opposed at every stage of the litigation by King & Spalding LLP, Perkins Coie LLP and Debevoise & Plimpton LLP, all prominent national law firms that frequently defends public companies in securities class actions, which staffed the case with top-flight legal talent at all levels.

In sum, Co-Lead Counsel were required to perform with a high level of skill, efficiency, and professionalism to assemble a case that was strong enough to encourage the Company and its insurers to compensate Settlement Class Members for their losses. Co-Lead Counsel evaluated the merits and risks presented, negotiated a very favorable payment, and settled the Action on excellent terms for the Class. The skill demonstrated by Co-Lead Counsel supports the requested fee.  *See, e.g.*, *OmniVision*, 559 F. Supp. 2d at 1046.

### e.    The Ninth Circuit Considers 25% of the Common Fund to be a Reasonable Fee

Plaintiffs' request for a 25% fee award is also consistent with the "benchmark" for compensation in this Circuit for common fund settlement cases.  In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" which may be adjusted depending on the circumstances of the particular case.  *See also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach") (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("The

district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate"); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946757, at *1 (C.D. Cal. May 11, 2010); *but see Activision*, 723 F. Supp. at 1377-78 (Chief Judge Marilyn Hall Patel, of the Northern District of California, endorsed a 30% award as the "better practice": "This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.").

The requested fee award of 25% of the Settlement Fund in this case is on par with fees awarded by this Court, as well as by numerous other courts within the Ninth Circuit, and is also in line with fee awards on settlement amounts that are similar to the Settlement achieved in this Action. *See Dickerson v. Cable Commc'ns, Inc.*, No. 3:12-CV-00012-PK, 2013 WL 6178460 (D. Or. Nov. 25, 2013) (awarding 25% fee).

In many circumstances, courts in the Ninth Circuit have awarded fees in excess of the 25% benchmark. First, in securities class actions, awards typically exceed the benchmark. *Omnivision*, 559 F. Supp. 2d at 1047 (citing *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)); *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016). That is because securities class actions are especially expensive and risky. *Cf. Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (risk enhancement of attorneys' fees is "especially important in securities cases").

Moreover, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015). And indeed, courts in the Ninth Circuit commonly grant fee awards of 30-33$^{1/3}$% where counsel achieves an excellent result. *Id.* at *11, *15.[5]

---

[5] *See also Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir. 2003); *Pacific Enterprises*, 47 F.3d at 379; *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005); *Deaver*, 2015 WL 8526982, at *11; *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014); *Vandervort v.*

Here, the Action settled for 12% of the Class Period damages *before* Plaintiffs had proved that Galena stock traded in an efficient market (a prerequisite for class certification) and *before* Plaintiffs demonstrated (either on summary judgment or at trial) the amount of Galena's share price decline attributable to the revelation of the truth about Defendants' alleged pump-and-dump scheme. In sum, the obstacles to recovery faced by the Class in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and applicable proof requirements during the later stages of the case (and on appeal).

### 4.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-fund method. *See, e.g. Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002).

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. "Courts have discretion to apply a positive multiplier after considering factors such as: the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *In re TracFone Unlimited Serv. Plan Litig*., 112 F. Supp. 3d 993, 1010 (N.D. Cal. 2015), *reconsideration denied*, No. C-13-3440 EMC, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015). *See also Stetson v. Grissom*, No. 13-57061, 2016 WL 2731587, at *5 (9th Cir. May 11, 2016) (quoting *Stanger*, 812 F.3d at 741 (further citations omitted)).

The *Vizcaino* Court noted that while "in the case of an early settlement, the lodestar

---

*Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014). *Bond v. Ferguson Enters.*, *Inc.,* No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *14 (E.D. Cal. June 30, 2011) (awarding 30% of common fund); *In re CV Therapeutics, Inc., Sec. Litig.,* No. C 03-3709 SI, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (awarding 30% of common fund).

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

calculation may convince a court that a lower percentage is reasonable," class counsel should not "necessarily receive a lesser fee for settling a case quickly." *Id.* at 1050 & n. 5. In *Vizcaino*, the court approved a fee representing a multiple of 3.65 times counsel's lodestar, holding that "courts routinely enhance 'the lodestar to reflect the risk of non-payment in common fund cases[,]'" stating that "[t]ypically, a lodestar is multiplied up to four times to yield an enhanced award[,]" and approving a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder settlements and the multipliers for each in which the average multiplier is 3.28). *See also Steiner v. Am. Broad. Co.,* 248 F. App'x 780, 783 (9th Cir. 2007) (court awarded a 6.85 lodestar multiplier in common fund case, finding that it fell "well within the range of multipliers that courts have allowed."); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (awarding multiplier of 5.5); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004); (noting that from 2001 through 2003, the average multiplier approved in common fund cases was 4.35); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1215 (W.D. Wash. 2004) (applying a 3.5 multiplier, and finding that such a "not large" multiplier was reasonable where there was only a "modest" risk of non-recovery, and where parties reached settlement before counsel responded to defendants' motion to dismiss); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier "well within acceptable range" for fee awards in complicated class action litigation).

Co-Lead Counsel have expended 2,203.25 hours of professional time on this case to date. Joint Decl. ¶64.  The total lodestar, based on their hourly rates, is approximately $1.49 million, yielding a multiplier of 3.3. *Id.*  Here, the lodestar cross-check confirms that the fee requested by Co-Lead Counsel is fair and reasonable.[6] Additionally, Co-Lead Counsel's lodestar does not

---

[6] As set forth above, the total value of the Settlement is $20.0 million, consisting of $19.0 million in cash, and $1.0 million in stock, making the 25% fee requested fee equal to $5.0 million, or $4.75 million in cash and $0.25 million in stock.

include time and effort that they will continue to devote to prosecuting the remaining defendants in the case.[7] Indeed, the  multiplier in this case is reasonable when compared to both the 3.65 multiplier approved in *Vizcaino* and the 1-4 range of frequently awarded multipliers discussed in *Vizcaino* (especially considering that the recovery achieved for the Class, as a percentage of maximum damages, is substantially above the median for comparably-sized securities fraud class actions).

### 5.    Co-Lead Counsel's Expenses Are Reasonable And Were Necessary To Achieve The Benefit Obtained

It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citation omitted); *see also Immune Response,* 497 F. Supp. 2d at 1177. Co-Lead Counsel incurred out-of-pocket expenses of $112,534.65 in prosecuting this Action.  *See* Joint Decl. ¶64; Smollar Decl. ¶12; Rosen Decl. ¶7; Ratliff Decl. ¶7.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996) (stating that "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionally by those class members who benefit by the settlement"). The categories of expenses for which Co-Lead Counsel seek reimbursement here are the type of expenses routinely charged to hourly fee paying clients, and, therefore, should be reimbursed out of the common fund.  The bulk of expenses in the case are mediation-related expenses and expert fees.  Expenses also include the costs of computerized research, reflecting ordinary charges for computerized factual and legal research services such as

[7] In addition, Co-Lead Counsel will expend additional time directing the claims administration process and final distribution, and will not seek additional compensation for this work.

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

Westlaw. Further, counsel's expenses include those for copying, postage, faxing, etc. Such expenses are appropriately compensable from a common fund, because "Plaintiffs' out-of-pocket expenses for copying, postage, faxing, computer research, and Federal Express shipping are routinely billed to fee-paying clients and thus are all compensable as part of a reasonable attorney's fee." *Tax Analysts v. I.R.S.*, No. CIV. A. 94-923 (GK), 1999 WL 744169, at *1 (D.D.C. Sept. 3, 1999). In addition, Co-Lead Counsel was required to travel in connection with this litigation for mediation and hearings, and thus incurred moderate costs for travel, meals and lodging. The expenses in this category are reasonable in amount and are properly charged against the common fund. *Immune Response*, 497 F. Supp. 2d at 1177.

Because the expenses were incurred with no guarantee of recovery, Co-Lead Counsel had a strong incentive to keep them as low as reasonably possible- and did so.  Indeed, total expenses of $112,534.65 are significantly less than the $475,000 estimate contained in the Notice. As the expenses were relatively small compared to the recovery obtained (0.5% of the $20 million settlement), and were incurred on an ongoing basis for such items as expert fees, mediation, legal research, copying and other expenses necessarily incurred and directly related to the prosecution of the case, the total amount of expenses is reasonable and should be reimbursed in full from the common fund following payment of attorneys' fees.

### 6. Co-Lead Counsel's Request for a Reimbursement of Costs to Lead Plaintiffs, for Their Efforts in Achieving the Settlement on Behalf of the Class, Should be Granted

The PSLRA permits Lead Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class…" 15 U.S.C. 78U-4(a)(4). In accordance with the PSLRA, and the inherent powers of the court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives.  *See Omnivision*, 559 F. Supp. 2d at 1049 ($29,000 award); *Immune Response*, 497 F. Supp. 2d at 1173-74 ($40,000 award); *CV Therapeutics*, 2007 WL 1033478, at *2 ($26,000 award of $13.4 million settlement); *Van Vranken*, 901 F. Supp. at 299-300 ($50,000).

NOTICE OF MOTION & MOTION; MPA ISO ATTORNEYS' FEES

Here, Lead Plaintiffs have dedicated their time and expenses to prosecuting the Action. Lead Plaintiffs submit herewith Declarations documenting their costs in the amount of $5,000 incurred in connection with the Action.   Declaration of Lead Plaintiffs Joseph Buscema, ("Buscema Decl."); Kisuk Cho ("Cho Decl."); Anthony Kim ("Kim Decl."); Pantelis Lavidas ("Lavidas Decl."), attached to the Joint Dec. as Exhibits 3-6. These costs represent a reimbursement for Lead Plaintiffs' time spent directly related to their representation of the Class, including time spent: reviewing pleadings, motions, and other documents; searching for and producing documents to their counsel; communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about the settlement.  Buscema Decl. ¶5; Lavidas Decl. ¶5; Cho Decl. ¶5; Kim Decl. ¶5.  As set forth above, lead plaintiff awards of similar size, and based on similar hourly rates, have been awarded in other cases.

### 7.     The Reaction Of The Class Supports The Requested Award

Over 74,834 Claim Packets were mailed to potential Settlement Class Members and a Summary Notice was published in *Investor's Business Daily* and made available to the public on the Claims Administrator's website. Hughes Decl. ¶7. Settlement Class Members were informed in the Notice that Co-Lead Counsel would apply for attorneys' fees of up to 33 $^{1/3}$% of the Settlement Fund, plus reimbursement of litigation costs and expenses, plus interest, and were advised of their right to object to Co-Lead Counsel's fee request. To date, no objections and only eight requests for exclusion have been received.  *See* Hughes Decl. ¶11. The reaction of the Class is an important factor supporting the fee award. *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012 WL 2117001, at *19 (E.D. Cal. June 11, 2012); *Mark v. Valley Ins. Co.*, No. CV 01-1575-BR, 2005 WL 1334374, at *2 (D. Or. May 31, 2005)

## V.    CONCLUSION

Securities class actions are complex and laden with risk. Co-Lead Counsel accepted this risk and expended thousands of hours vigorously litigating this Action despite the very real

possibility that if they did not achieve a favorable result for the Class, they could receive no compensation whatsoever. As demonstrated herein and in the papers submitted herewith, the Action has been hard-fought at every turn. From the beginning, Lead Plaintiffs have been faced with determined adversaries represented by experienced and equally-determined defense counsel. Without any assurance of victory, Lead Plaintiffs and their Counsel pursued this Action to a successful conclusion.

In light of all of the foregoing considerations, the Settlement is an excellent recovery for the Class and reflects the skill and dedication of Co-Lead Counsel. Thus, it is respectfully requested that the Court approve the fee and expense application and enter the Order submitted herewith awarding Co-Lead Counsel 25% of the Settlement Fund, $5.0 million, plus reimbursement of $112,534.65  for expenses; and reimbursement to each Lead Plaintiff in the amount of $5,000.

Dated: May 26, 2016                    Respectfully submitted,


                                       /s/  Leigh Handelman Smollar (pro hac vice)
                                       **POMERANTZ LLP**
                                       Patrick V. Dahlstrom
                                       Leigh Handelman Smollar
                                       Ten South LaSalle Street, Suite 3505
                                       Chicago, Illinois 60603
                                       Tel:  (312) 377-1181

                                       **POMERANTZ LLP**
                                       Jeremy A. Lieberman (pro hac vice)
                                       600 Third Avenue, 20th Floor
                                       New York, NY 10016
                                       Tel: 212-661-1100

                                       -and-

                                       /s/  Phillip Kim (pro hac vice)
                                       **THE ROSEN LAW FIRM, P.A.**
                                       Laurence M. Rosen (pro hac vice)
                                       Phillip Kim (pro hac vice)
                                       275 Madison Avenue, 34th Floor
                                       New York, NY  10016
                                       Phone: (212) 686-1060
                                       Fax: (212) 202-3827
                                       Email: lrosen@rosenlegal.com
                                       *Co-Lead Counsel for Plaintiffs*


                                       **RANSOM, GILBERTSON, MARTIN &
                                       RATLIFF, L.L.P.**
                                       Jeffrey Ratliff
                                       1500 NE Irving Street, Suite 412
                                       Portland, Oregon 97232
                                       Tel: 503-226-3664
                                       *Liaison Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

DATED**:** May 26, 2016

<u>/s/ Phillip Kim</u>