# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| IN RE GALENA BIOPHARMA, INC. SECURITIES LITIGATION, | CASE No.:3:14-cv-00367-SI<br>Filed: May 26, 2016<br>Judge: Hon. Michael Simon |

**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on June 27, 2017 ("Preliminary Approval Order"), on November 17, 2017 at 3:30 p.m., or as soon thereafter as counsel may be heard, at the United States Court, District of Oregon, Portland Division, 1000 Southwest Third Avenue, Portland, Oregon 97204, before the Honorable Michael H. Simon, Class Representatives Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema ("Class Representatives") will move for an order approving the final settlement of this Action and dismissing it with prejudice.

The grounds for this motion are that the requested award of fees and expenses to Co-Class Counsel are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This motion is supported by the Declaration of Leigh Handelman Smollar in Support of Motion for Attorneys' Fees and Reimbursement of Expenses ("Smollar Decl."); the Declaration of Laurence Rosen in Support of Motion for Attorneys' Fees and Reimbursement of Expenses ("Rosen Decl."); Declaration of Jeffrey Ratliff in Support of Motion for Attorneys' Fees and Reimbursement of Expenses ("Ratliff Decl."); and the other filings in this case; and such other and further representations as may be made by counsel at any hearing on this matter.

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SPECIFIC EFFORTS OF CO-CLASS COUNSEL .........................................2

III.    ARGUMENT...........................................................................................................4

      A.    Co-Class Counsel Requests an Award of Attorneys' Fees and
Reimbursement of Expenses.........................................................................4

      B.    A Reasonable Percentage of the "Common Fund" Recovered is an
Appropriate Approach to Awarding Attorneys' Fees in Common Fund
Cases ...............................................................................................................5

      C.    The Requested Fee is Reasonable Under a Percentage-of-Fund Approach ...........8

          1.    Co-Class Counsel Achieved an Excellent Result for the Class .................8

          2.    Risks of Litigation.........................................................................................9

          3.    The Contingent Nature of the Fee and the Financial Burden Carried
by Co-Class Counsel.................................................................................10

          4.    The Skill Required and the Quality of the Work ......................................11

          5.    In the Ninth Circuit, 25% of the Common Fund is the Benchmark
Fee ...............................................................................................................13

      D.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable .........................13

      E.    Co-Class Counsel's Expenses Are Reasonable And Were Necessary To
Achieve The Benefit Obtained.................................................................14

      F.    The Reaction Of The Class Supports The Requested Award ...............................16

IV.     CONCLUSION.....................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Amgen Inc.Connecticut Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ............................................................................................. 7

*Bateman Eichler, Hill Richards, Inc., v. Berner*,
    472 U.S. 299 (1985) ................................................................................................. 7

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D.Fla. 1988) ............................................................................ 12

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................................................. 6

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................. 5

*Central Railroad & Banking Co. of Ga. V. Pettus*,
    113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885) ..................................................... 6

*Dickerson v. Cable Commc'ns, Inc.*,
    No. 3:12-CV-00012-PK, 2013 WL 6178460 (D. Or. Nov. 25, 2013) .................... 13

*Eltman v. Grandma Lee's , Inc.*,
    No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) .............................. 11

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ............................................................................... 14

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) .................................................................................. 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................ 8

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..................................................................................... 15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................. 8

*In re Activision Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................... 7

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................. 10

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............. 12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ..................................................................... 12

*In re High-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................. 7

*In re Immune Response Sec. Litig.*,
  497 F. Supp.2d 1166 (S.D. Cal. 2007)................................................................ 9, 11, 15, 16

*In re King Resources Co. Sec. Lit.*,
  420 F. Supp. 610 (District of Colorado, 1976) ...................................................... 12

*In re Media Vision Tech. Sec. Litig.*,
  913 F.Supp. 1362 (N.D. Cal. 1996) .................................................................... 15

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D.Cal. 2008) ...................................................... 6, 11, 13

*In re Pac. Enters. Sec. Litig.*,
  47 F.ed 373 (9th Cir. 1995)................................................................................ 13

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005).................................................................................. 7

*In re TracFone Unlimited Serv. Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015),
  *reconsideration denied*,
  No. C-13-3440 EMC, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015).................................. 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*),
  19 F.3d 1291 (9th Cir. 1994) ...................................................................... 5, 9, 10

*Internal Imp. Fund Trustees v. Greenough*,
  105 U.S. 527 (1881)............................................................................................ 5

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) .............................................................................. 7

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................ 11

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976)................................................................................ 9

*Mark v. Valley Ins. Co.*,
  No. CV 01-1575-BR, 2005 WL 1334374 (D. Or. May 31, 2005)........................ 16

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006)........................................................................ 7

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*,
  No. 3:14-CV-00645-ST, 2016 WL 54678 (D. Or. Jan. 5, 2016) ........................... 5

*Pace v. Quintanilla*
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........................... 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ..................................................................... 5, 6, 13

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ................................................................. 13

*Schiller v. David's Bridal, Inc.*,
    No. 1:10-CV-00616-AWI, 2012 WL 2117001 (E.D. Cal. June 11, 2012) ............................ 16

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................................. 6

*Stetson v. Grissom*,
    No. 13-57061, 2016 WL 2731587 (9th Cir. May 11, 2016) .................................. 14

*Tax Analysts v. I.R.S.*,
    No. CIV. A. 94-923 (GK), 1999 WL 744169 (D.D.C. Sept. 3, 1999) ....................... 15

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................. 6

*Trans World Airlines, Inc. v. Hughes*,
    312 F.Supp. 478 (S.D.N.Y. 1970) .......................................................... 11

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ................................................................. 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................ passim

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................... 10

## STATUTES

15 U.S.C. § 78u-1(a)(6) ........................................................................... 7

15 U.S.C. § 78u-4(b) ............................................................................. 5

## RULES

Fed. R. Civ. P. 23(e) ............................................................................. 1

Fed. R. Civ. P. 23(h) ............................................................................. 5

## OTHER AUTHORITIES

*Economic Analysis of Law*,
    Richard Posner, (3d ed. 1986) .............................................................. 10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Pursuant to Federal Rule of Civil Procedure 23(e), Class Representatives Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema ("Class Representatives")[1], respectfully move this Court for an Order awarding: (1) attorneys' fees of 25% of the Settlement Fund of $165,000 (which supplements the earlier settlement with Galena and its officers and directors (the "Galena Settlement") of $20,000,000), or $41,250; and (2) reimbursement of $30,000 in reasonable and necessary expenses that were incurred in prosecuting this Action.

## I.    INTRODUCTION

Since reaching the Galena Settlement, Co-Class Counsel and Liaison Counsel continued to prosecution of this action ("Action") on a contingency fee basis and spent an additional282.70] hours and incurring $42,169.70 in unreimbursed fees and out-of-pocket expenses, which led to this Settlement with Defendants DreamTeam Group LLC or MissionIR ("DreamTeam"), Michael McCarthy ("McCarthy", and with DreamTeam, the "DreamTeam Defendants"), Lidingo Holdings, LLC ("Lidingo") and Kamilla Bjorlin ("Bjorlin," with Lidingo the "Lidingo Defendants", and all settling defendants collectively the "Promoter Defendants").

Co-Class Counsel's efforts have resulted in an additional $165,000 settlement from the Promoter Defendants. This six-figure Settlement obtained from relatively impecunious defendants is an excellent result for the Class. Further, the Settlement will further the purpose of the securities laws to deter misconduct, as the funds the Promoter Defendants are paying in the Settlement are a significant portion of their net worth.

As compensation for their efforts, Co-Class Counsel respectfully request an award of attorneys' fees in the amount of twenty-five percent of the gross settlement fund or $41,250 and

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings as in the Stipulation of Settlement (Dkt. No. 221) (the "Stipulation").

reimbursement of the expenses incurred in prosecuting these claims in the amount of $30,000. This requested fee and reimbursement of expenses falls well within the range of fee awards typically awarded in similar cases in the Ninth Circuit, and is reasonable in light of the successful result obtained in this complex case. Further, the fees do not result in a windfall, as even if the Court granted Co-Class Counsel's request in full, it would recover less than a quarter of its lodestar. *See* Declaration of Jonathan Horne in Support of Class Representatives' Unopposed Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Horne Fee Dec.") ¶8.

The Class overwhelmingly approves of the settlement and request for attorneys' fees, evidenced by the fact that there has not been a single objection lodged to date. For the reasons set forth more fully below, Class Representatives respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should thus be awarded by the Court.

## II.    SPECIFIC EFFORTS OF CO-CLASS COUNSEL[2]

The gravamen of the claims against the Promoter Defendants required Plaintiffs to prove that the Galena Defendants and the Promoter Defendants engaged in a pump and dump scheme. The Complaint alleges that the Promoter Defendants manipulated the market price of Galena stock by publishing bullish articles regarding Galena on third-party websites without disclosing that they were paid promotions. The Promoter Defendants were paid approximately 15k-20k per month, each to carry out the fraudulent scheme. ¶¶73, 77. The Galena Defendants sold their shares at artificially inflated prices for proceeds of more than $16 million. ¶128.

---

[2] The Memorandum and Points and Authorities in Support of Class Representatives' Notice of Motion and Motion for an Order Granting Final Approval of Class Action Settlement (the "Final Approval Motion"), filed herewith, sets out the relevant facts and procedural history.

To successfully prosecute the Action, Co-Class Counsel conducted extensive investigation, research, and discovery into the merits of the Action, including:

- Reviewing and analyzing Galena's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and investment conference transcripts, and other public statements;

- Collecting and reviewing a compilation of analyst reports and major financial news service reports on Galena;

- Reviewing and analyzing stock trading data relating to Galena;

- Locating and interviewing witnesses, including former Galena and DreamTeam employees;

- Researching in detail the business operations of DreamTeam and Lidingo;

- Analyzing challenges to Class Representatives' adequacy;

- Drafting the initial complaint and the Consolidated Amended Complaint in a manner which complied with the falsity and scienter requirements imposed by the PSLRA;

- Researching and drafting memoranda opposing Defendants' three separate Motions to Dismiss, including continual research after the briefing and providing the Court supplemental authority and supplemental briefing on certain issues requested by the Court after oral argument;

- Preparing for and appearing at oral argument on Defendants' Motions to Dismiss;

- Consulting with economic experts in the areas of loss causation, market efficiency, and damages;

- Preparing for and participating in two separate full-day mediations with a nationally regarded third-party neutral, the Hon. Layn R. Phillips (Ret.), including drafting opening mediation statements and responding to Defendants' mediation statements, obtaining a very favorable settlement offer following arm's length negotiations with defense counsel, and participating in continued negotiation efforts over the weeks following the mediation sessions to achieve and finalize the Settlement;

- Preparing the Settlement, motion papers and related documents necessary to provide notice of the Settlement to Class Members, and to obtain preliminary and final approval of the Settlement; and

- Obtaining and reviewing all of the documents that Galena and its officers and

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

directors had previously produced to the SEC.

Co-Class Counsel expended additionally time and resources to obtain this Settlement, including:

- Researching and drafting memoranda certifying the Class;

- Conducting and reviewing discovery on the Promoter Defendants;

- Conducting extensive investigation into the Promoter Defendants' ongoing businesses and personal assets to determine their ability to pay any judgment or settlement; and

- Engaging in extensive settlement discussions.

Horne Fee Dec. ¶5.

The time and expenses set forth in this Motion and Memoranda only related to the time period after the Galena Settlement up to the present time. Co-Class Counsel's additionally efforts to successfully resolve this Action against the Promoter Defendants have been without compensation of any kind to date, and payment of attorneys' fees was, and always has been, wholly contingent upon the result achieved. As compensation for these efforts, Co-Class Counsel respectfully request this Court to award attorneys' fees of 25% of the Settlement Fund, plus $30,000 in unreimbursed expenses (of Co-Class Counsel's total unreimbursed expenses of $42,169.70). Supported by ample case law, both in this Circuit and across the country, Co-Class Counsel's 25% fee request is appropriate compensation for the excellent result Co-Class Counsel have obtained for the Class.

## III.    ARGUMENT

### A.    Co-Class Counsel Requests an Award of Attorneys' Fees and Reimbursement of Expenses

The PSLRA, the Federal Rules of Civil Procedure and Ninth Circuit precedent all require

that a fee award be reasonable.[3] Here, the requested amount is based on a fee arrangement agreed upon at the outset of the case between Class Representatives and Co-Class Counsel and is reasonable considering the relevant factors in the Ninth Circuit and a lodestar cross-check. As such, Co-Class Counsel respectfully ask that the Court award the requested fee.

### B.    A Reasonable Percentage of the "Common Fund" Recovered is an Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Class, Co-Class Counsel seek a fee of 25% of the Settlement Fund. The requested fee for the settlement on behalf of the Settlement Class is $41,250.

Both Supreme Court and Ninth Circuit precedent support Class Representatives' request for a percentage of the settlement fund. Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services. The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, No. 3:14-CV-00645-ST, 2016 WL 54678, at *2 (D. Or. Jan. 5, 2016). The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1300 (9th Cir. 1994); *accord Ott*, 2016 WL 54678, at *2. This rule, known as the "common fund doctrine," is firmly rooted in American case law. *See, e.g., Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881).

---

[3] 15 U.S.C. § 78u-4(b) (the total attorneys' fees and expenses awarded by the court are not to exceed a "reasonable percentage" of the recovery); Fed. R. Civ. P. 23(H) ("the court may award reasonable attorneys' fees and nontaxable costs"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. V. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.
>
>             ***
>
> The amount of such a reward is that which is deemed "reasonable" under the circumstances.
>
> (Emphasis in original; citations omitted).

In *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984), the Supreme Court recognized that under the common fund doctrine, a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d at 268; *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases. Following the Ninth Circuit's decisions in *Paul, Johnson* and its progeny, district courts have almost uniformly shifted to the percentage method in awarding fees in representative actions. Indeed, use of the percentage method "appears to be dominant." *In re OmniVision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated with a percentage of the recovery. Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) ("it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to

recover a reasonable fee, since the lodestar method does not reward early settlement;") *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). Finally, use of the percentage method decreases the burden on the courts by eliminating a full-blown, detailed and time-consuming "lodestar" analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement. *See In re Activision Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) ("[T]he lodestar method is too cumbersome and time-consuming of the resources of the Court.").

Finally, since this case is a securities class action, it is important to recognize that application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6) (emphasis added); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re High-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014).

Courts also have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar misconduct. Indeed, the Supreme Court has emphasized that private securities actions, such as this action, provide an effective weapon in the enforcement of the securities laws. *See generally, Bateman Eichler, Hill Richards, Inc., v. Berner*, 472 U.S. 299, 310 (1985); *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (2013) ("Congress, the Executive

Branch, and this Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission") (internal quotations omitted).

### C.    The Requested Fee is Reasonable Under a Percentage-of-Fund Approach

In this Circuit, it has long been established that the benchmark award for attorneys' fees is 25%. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Relevant factors in assessing whether the requested percentage of the fee is appropriate include: (1) the results for the class; (2) the risks for its counsel; (3) whether the fee is within the range typically associated with cases of this kind; (4) the burden on plaintiffs' counsel of prosecuting the case, and (5) the difficulty of the questions presented. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Co-Class Counsel continued prosecuting this case with no guarantee of receiving any compensation and paid the additional costs and expenses to date without reimbursement. They have expended over 282.70 hours in professional services and have incurred $42,169.70 in out-of-pocket expenses. *See* Horne Fee Decl. ¶8. By virtue of the hours and expenses invested in this litigation, Co-Class Counsel have created a $165,000 settlement fund for the benefit of the Class. Thus, confident that the relevant factors as discussed below support this application, Class Representatives seek an attorneys' fee award of 25% of the Settlement Fund, as well as reimbursement of expenses.

### 1.    Co-Class Counsel Achieved an Excellent Result for the Class

Courts have recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (stating that the "most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec.*

*Litig.*, 497 F. Supp.2d 1166, 1175 (S.D. Cal. 2007). This Settlement is an excellent result because it draws blood from a stone. The DreamTeam Defendants' contribution to the Settlement is $100,000, while the Lidingo Defendants' is $65,000. DreamTeam and its affiliates' lost more than $730,000 between 2014 and 2015 and their liabilities exceed their assets. Furthermore, McCarthy's personal net worth was less than $450,000. Dkt. No. 209-6 ¶¶7-9. The DreamTeam Defendants are also paying the SEC approximately $120,000 to settle claims over misconduct involving Galena and another company. As such, the $100,000 recovery for the Class represents close one-third of McCarthy's remaining personal net worth.

Class Representatives reviewed Bjorlin's tax returns for 2014 and 2015 and confirmed that the Lidingo Defendants also have limited financial resources. The Lidingo Defendants are facing claims from the SEC as well. Therefore, the $65,000 recovery for the Class is excellent as well in light of substantial collectability issues.

### 2.    Risks of Litigation

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994); *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). That – as here – the case is "fraught with risk and recovery was far from certain" is a relevant circumstance which the Court must take into account. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

The Final Approval Motion, defined in footnote 2, above, sets out the risks the Class still faces in obtaining a recovery from the Promoter Defendants. There is no way around the chief among them: that the Promoter Defendants simply do not have enough money to pay substantially more than they are paying now.

In addition to the risks the Class faces *now*, however, *at time of filing*, Class Representatives undertook additional risks. Class Representatives' claims were subject to the PSLRA. As Judge Ellison observed in dismissing securities claims brought against BP following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("Legal precedents are continually making it more difficult to plead securities class actions.") Class Representatives' allegations might have fallen short of this demanding standard.

### 3.    The Contingent Nature of the Fee and the Financial Burden Carried by Co-Class Counsel

A determination of a fair fee must include consideration of its contingent nature. It is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.* Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 25% award. Co-Class Counsel spent 282.7 hours and $42,169.70 prosecuting the claims against the Promoter Defendants, all while facing the

very real risk of recovering nothing. There are dozens of ways to lose cases even after having spent all this time and money, from failing to meet the PSLRA's imposing pleading standards, to failing to meet the highly technical standards for class certification, to failing to obtain enough evidence to survive summary judgment, to simply not convincing the jury. Any fee award or expense reimbursement to Co-Class Counsel has always been at risk and completely contingent on the result achieved, and on this Court's exercise of its discretion in making any award. Thus, this supports the requested fee. *See Heritage Bond.*, 2005 WL 1594403, at *21 (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *OmniVision*, 559, F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### 4.    The Skill Required and the Quality of the Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Thus, the standing and prior experience of Co-Class Counsel are relevant in determining fair compensation. *See, e.g., Trans World Airlines, Inc. v. Hughes*, 312 F.Supp. 478, 480 (S.D.N.Y. 1970); *Eltman v. Grandma Lee's , Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

Co-Class Counsel are experienced and skilled practitioners in the securities litigation field. *See* Exhibits A to Smollar Decl. and Rosen Decl., Firm Resumes of Pomerantz LLP and The Rosen Law Firm, P.A. Co-Class Counsel's decades of experience in litigating securities fraud

class actions enabled them to successfully address the various legal and practical challenges that came their way. *In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) ("The court also notes that, throughout this litigation, it has been impressed by [Pomerantz's] acumen and diligence."); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action.")

Given the complexity of the issues presented in this Action, including the hotly-contested issues of loss causation, scienter, damages, and the statements' makers under *Janus*, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. Moreover, the Promoter Defendants' limited financial resources made litigation even more difficult, as Co-Class Counsel was required to work efficiently while keeping costs as low as possible. The quality of representation is reflected in the significant recovery obtained. *See Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 547-48 (S.D. Fla. 1988).

The quality of opposing counsel is also important in evaluating the quality of the work done by Co-Class Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Resources Co. Sec. Lit.,* 420 F. Supp. 610, 634 (D. Colo. 1976). Here, Class Representatives were vigorously opposed at every stage of the litigation by Ball Janik LLP, a prominent Portland law firm, and Edward Gartenberg of Gartenberg Gelfand Hayton LLP, who previously chaired Thelen Reid LLP's Securities Litigation and SEC Defense Practice. Declaration of Jonathan Horne in Support of Motion for (I) Final Approval of Class Action Settlement; (II) Approval of Plan of Allocation; (III) Class Certification; (IV) Award of Attorneys' Fees; and (V) Reimbursement of Expenses (the "Horne Decl.").

In sum, Co-Class Counsel were required to perform with a great skill, efficiency, and professionalism to assemble a case that was strong enough to encourage the Promoter Defendants to spend much of their net worth to settle it. Co-Class Counsel evaluated the merits and risks presented, negotiated a very favorable payment, and settled the Action on excellent terms for the Class. The skill demonstrated by Co-Class Counsel supports the requested fee. *See, e.g.*, *OmniVision*, 559 F. Supp. 2d at 1046.

### 5.    In the Ninth Circuit, 25% of the Common Fund is the Benchmark Fee

Class Representatives' request for a 25% fee award is also consistent with the "benchmark" for compensation in this Circuit for common fund settlement cases.  In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" which may be adjusted depending on the circumstances of the particular case.  *See also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach") (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("The district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate").

The requested fee award of 25% of the Settlement Fund in this case is on par with fees awarded by this Court, as well as by numerous other courts within the Ninth Circuit, and is also in line with fee awards on settlement amounts that are similar to the Settlement achieved in this Action. *See Dickerson v. Cable Commc'ns, Inc.*, No. 3:12-CV-00012-PK, 2013 WL 6178460 (D. Or. Nov. 25, 2013) (awarding 25% fee).

### D.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare

counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-fund method. *See, e.g. Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002).

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. "Courts have discretion to apply a positive multiplier after considering factors such as: the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *In re TracFone Unlimited Serv. Plan Litig*., 112 F. Supp. 3d 993, 1010 (N.D. Cal. 2015). *See also Stetson v. Grissom*, No. 13-57061, 2016 WL 2731587, at *5 (9th Cir. May 11, 2016) (quoting *Stanger*, 812 F.3d at 741 (further citations omitted).

In contrast, in this case, Co-Class Counsel request attorneys' fees that amount to a small fraction of their lodestar. Co-Clas**s** Counsel have expended 282.70 hours of professional time in continuing to prosecute this action.  Horne Fee Decl. ¶7.  The total lodestar, based on Co-Class Counsel's hourly rates, is $187,454.50, yielding a negative multiplier of 0.22. *Id.*  Thus, the lodestar cross-check confirms that the fee requested by Co-Class Counsel is fair and reasonable. Additionally, Co-Class Counsel's lodestar does not include time and effort that they will continue to devote to prosecuting the remaining defendants in the case.[4]

### E. Co-Class Counsel's Expenses Are Reasonable And Were Necessary To Achieve The Benefit Obtained

It is well established that counsel who create a common fund are entitled to the

---

[4] In addition, Co-Class Counsel will expend additional time directing the claims administration process and final distribution, and will not seek additional compensation for this work.

reimbursement of expenses that they advanced to a class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citation omitted); *see also Immune Response,* 497 F. Supp. 2d at 1177. Co-Class Counsel incurred out-of-pocket expenses of $112,534.65 in prosecuting this Action.  *See* Horne Fee Decl. ¶8.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996) (stating that "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionally by those class members who benefit by the settlement").

The categories of expenses for which Co-Class Counsel seek reimbursement here are the type of expenses routinely charged to hourly fee paying clients, and, therefore, should be reimbursed out of the common fund.  The bulk of expenses in the case are expert fees.  Expenses also include the costs of computerized research, reflecting ordinary charges for computerized factual and legal research services such as Westlaw. Further, counsel's expenses include those for copying, postage, faxing, etc. Such expenses are appropriately compensable from a common fund, because "Plaintiffs' out-of-pocket expenses for copying, postage, faxing, computer research, and Federal Express shipping are routinely billed to fee-paying clients and thus are all compensable as part of a reasonable attorney's fee." *Tax Analysts v. I.R.S.*, No. CIV. A. 94-923 (GK), 1999 WL 744169, at *1 (D.D.C. Sept. 3, 1999). In addition, Co-Class Counsel was required to travel in connection with this litigation, and thus incurred moderate costs for travel, meals and lodging. The expenses in this category are reasonable in amount and are properly charged against the common

fund. *Immune Response*, 497 F. Supp. 2d at 1177.

Because the expenses were incurred with no guarantee of recovery, Co-Class Counsel had a strong incentive to keep them as low as reasonably possible- and did so.  Indeed, Co-Class Counsel is only seeking reimbursement of $30,000 of the $42,169.70 in total expenses it incurred in this Litigation. The expenses were relatively small compared to the tasks that had to be completed – litigating a securities class action through discovery is expensive.  Moreover, the expenses were incurred on an ongoing basis for such items as expert fees, legal research, copying and other expenses necessarily incurred and directly related to the prosecution of the case. The total amount of expenses is reasonable and should be reimbursed in full from the common fund following payment of attorneys' fees.

### F.     The Reaction Of The Class Supports The Requested Award

Over 5,676 Claim Packets were mailed to potential Settlement Class Members and a Summary Notice was published in *Investor's Business Daily* and made available to the public on the Claims Administrator's website. Declaration of Justin R. Hughes Regarding (A) Mailing of the Notice; (B) Publication of the Publication Notice; (C) Update to the Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Hughes Decl.") ¶2. Settlement Class Members were informed in the Notice that Co-Class Counsel would apply for attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of litigation costs and expenses, plus interest, and were advised of their right to object to Co-Class Counsel's fee request. To date, no objections and no requests for exclusion have been received.  *See* Hughes Decl. ¶5. The reaction of the Class is an important factor supporting the fee award. *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012 WL 2117001, at *19 (E.D. Cal. June 11, 2012); *Mark v. Valley Ins. Co.*, No. CV 01-1575-BR, 2005 WL 1334374, at *2 (D. Or. May 31, 2005)

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

## IV.    CONCLUSION

Securities class actions are complex and laden with risk. Co-Class Counsel accepted this risk and expended thousands of hours vigorously litigating this Action despite the very real possibility that if they did not achieve a favorable result for the Class, they could receive no compensation whatsoever. As demonstrated herein and in the papers submitted herewith, the Action has been hard-fought at every turn. From the beginning, Class Representatives have been faced with determined adversaries represented by experienced and equally-determined defense counsel.  Without any assurance of victory, Co-Class Counsel pursued this Action to a successful conclusion.

In light of all of the foregoing considerations, the Settlement is an excellent recovery for the Class and reflects the skill and dedication of Co-Class Counsel. Thus, Co-Class Counsel respectfully request that the Court approve the fee and expense application and enter the Order submitted herewith awarding Co-Class Counsel 25% of the Settlement Fund, $41,250, plus reimbursement of $30,000 for expenses.

Dated: October 18, 2017                    Respectfully submitted,


                                           /s/ *Phillip Kim* (pro hac vice)
                                           **THE ROSEN LAW FIRM, P.A.**
                                           Laurence M. Rosen (pro hac vice)
                                           Phillip Kim (pro hac vice)
                                           Jonathan Horne (pro hac vice)
                                           275 Madison Avenue, 34th Floor
                                           New York, NY  10016
                                           Phone: (212) 686-1060
                                           Fax: (212) 202-3827
                                           Email: lrosen@rosenlegal.com


                                           -and-

                                           **POMERANTZ LLP**
                                           Patrick V. Dahlstrom

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

Leigh Handelman Smollar
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Tel:  (312) 377-1181

**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
600 Third Avenue, 20th Floor
New York, NY 10016
Tel: 212-661-1100

*Co-Class Counsel*

**RANSOM, GILBERTSON, MARTIN &
RATLIFF, L.L.P.**
Jeffrey Ratliff
1500 NE Irving Street, Suite 412
Portland, Oregon 97232
Tel: 503-226-3664

*Liaison Counsel for the Class*

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

DATED**:** October 18, 2017

<u>/s/ Phillip Kim</u>

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL